## Antonio L. BRITT *v.* STATE of Arkansas

CR 00-535 38 S.W.3d 363

Supreme Court of Arkansas
Opinion delivered March 1, 2001

*Perkins, Wilson & Associates, P.A.*, by: *Ronald C. Wilson*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Antonio Britt was convicted of first-degree murder, attempted first-degree murder, and two counts of kidnapping following a jury trial in the Mississippi County Circuit Court. He was sentenced by the jury to three terms of life imprisonment plus an additional thirty years to be served consecutively. He appeals his conviction, challenging the sufficiency of the evidence to support a conviction of first-degree murder or kidnapping, the trial court's denial of his motion to suppress inculpatory statements, and the trial courts refusal to instruct the jury on the lesser-included offenses of second-degree murder and manslaughter.

This is Mr. Britt's second appeal in this matter. We reversed his first conviction and remanded the case for retrial, holding that the trial court erroneously denied Mr. Britt's motion to suppress two statements made on April 10, 1995, in violation of his right to be taken before a judicial officer without unnecessary delay pursuant to Ark. R. Crim. P. 8.1. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998) (*Britt I*). This appeal arises from his conviction following retrial. We find no error and affirm the judgment of the trial court.

In the early morning hours of April 9, 1995, Bradley Davis and Jonathon Hancock were cruising around Blytheville in a white Chevrolet pick-up truck looking for drugs when they came upon a white Bonneville at a four-way stop. The Bonneville was occupied by Mr. Britt, Scotty Hodges, William Hunt, and Clarence "Ray Ray" Williams. Mr. Davis and Mr. Hancock asked the men if they had any drugs, and the four men in the Bonneville instructed Davis and Hancock to pull over. Mr. Davis, who is six feet, four inches tall, testified that, when they pulled over, a thin black man who was taller than himself tapped on the truck window with a gun and told him to get out. Mr. Britt was the only one in the Bonneville who matched this description. He demanded Mr. Davis's money and, upon learning that Mr. Davis had no money, told Mr. Davis that he would take his life instead. He ordered Mr. Davis at gunpoint into the Bonneville and told him to lay down on the floorboard where he could not be seen. Mr. Britt then changed his mind and ordered Mr. Davis to get into the trunk of the car. Mr. Davis complied and discovered that Mr. Hancock was already in the trunk.

Mr. Davis and Mr. Hancock were driven around in the trunk of the Bonneville for awhile with loud, verbally abusive rap music playing. The men in the Bonneville repeatedly turned the music down and asked loudly if Mr. Davis and Mr. Hancock were ready to die. During this time, Mr. Britt was driving the victims' truck and following the Bonneville.

The vehicle finally stopped in an area adjacent to the Mississippi River and the men were allowed out of the trunk. They were ordered to strip, but Mr. Davis hesitated to do so completely because he was afraid of being raped. He told his abductors that there was no need to rape anyone, and one of them replied "Well, that's not going to happen. We're just going to kill you." Mr. Davis then removed the remainder of his clothing and sat on the ground as ordered. He felt a bullet hit him in the arm so he rolled over onto his side and pretended to be dead, at which point he heard a voice say that he had been shot in the gut, so they had to finish the job. Another voice replied "Well, watch this." Mr. Davis then saw a hand with a gun pressed to Mr. Hancock's head and watched the trigger being pulled. Mr. Davis laid on the ground with his eyes shut and was shot two more times, although he did not remember feeling it. When the shooting ended, Mr. Davis heard one of the men say "What are you bitches going to do now?" And another replied "Not s**t." Someone poured beer on his face and then he heard the men drive away.

Mr. Davis was able to make his way to a tugboat on the river and find help. Mr. Davis survived the incident despite gunshot wounds to the back of his neck, his right ear, his left arm and his leg. Mr. Hancock was shot on the right side of his forehead at close range and had a "contact gunshot wound" on the top of his head, indicating that the gun was held against Mr. Hancock's head when it was discharged. He also had a gunshot wound to his left hand, a blunt force head injury, and several abrasions to his hands and back. Mr. Hancock died as a result of multiple gunshot wounds with blunt force trauma to the head.

Police discovered the white Bonneville at the scene with Mr. Davis's and Mr. Hancock's clothing inside. They also discovered three live .380 caliber rounds, two .380 caliber spent shell casings, a shell lead, a container of Budweiser and a cassette tape containing a rap song identified by Mr. Davis as the song being played while he was in the trunk. Mr. Britt's fingerprints were lifted from the Bonneville. A check of the registration revealed that the Bonneville belonged to a resident of St. Francis County. When they learned

that Mr. Davis and Mr. Hancock had been driving a white Chevrolet pickup, which was not found at the scene, the Mississippi County Sheriff's Department put out a description of the truck, advising area law enforcement agencies to be on the lookout for it, especially in St. Francis County where the vehicle found at the scene was registered.

Around 6:50 a.m. on April 9, 1995, a St. Francis Deputy Sheriff, William Faulk, passed the truck going in the opposite direction on a highway outside Madison, Arkansas. He turned his vehicle around in order to follow the truck and found it abandoned on the side of the road in Madison. Deputy Faulk learned from the sales clerk of a nearby grocery that the truck had been occupied by Mr. Britt and Mr. Hodges. Based on this information, the St. Francis County officers went to the home of Mr. Britt's cousin, Diane Lee, where they found Mr. Britt asleep on the sofa and arrested him on charges of theft by receiving. Mr. Britt's fingerprints were lifted from the truck and Mr. Davis's wallet was discovered by Ms. Lee on the sofa where Mr. Britt had been sleeping. Officers eventually located two handguns: a Lorcin .380 caliber automatic and a Bryco Jennings .380 caliber semiautomatic. Most of the bullets, shell casings, and bullet fragments recovered at the scene of the shooting and all of those recovered during the autopsy of Mr. Hancock were forensically connected to the two recovered handguns.

## I. Sufficiency of the Evidence

For his first point on appeal, Mr. Britt argues that the trial court erred by denying his motions for directed verdict made at the close of the State's case and at the close of all of the evidence. We disagree. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Peeler v. State*, 326 Ark. 423, 932 S.W.2d 312 (1996); *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996). On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Barr v. State, supra.*

Mr. Britt was convicted of murder in the first degree, attempted murder in the first degree, and kidnapping. On appeal, he challenges the sufficiency of the evidence to support his conviction on all charges.

Mr. Britt was convicted of first-degree murder in the death of Mr. Hancock. A person commits murder in the first degree if:

> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or
>
> (2) With the purpose of causing the death of another person, he causes the death of another person.

Ark Code Ann. § 5-10-102(a) (Repl. 1997).

Mr. Britt was convicted of the attempted first-degree murder of Mr. Davis. A person attempts to commit an offense if he:

> (2) Purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be.
>
> (b) When causing a particular result is an element of the offense, a person commits the offense of criminal attempt if, acting with the kind of culpability otherwise required for the commission of the offense, he purposely engages in conduct that constitutes a substantial step in a course of conduct intended or known to cause such a result.

Ark. Code Ann. § 5-3-201(a)(2), (b) (Repl. 1997).

Mr. Britt was also convicted of two counts of kidnapping arising out of the events leading to the death of Mr. Hancock and shooting of Mr. Davis.

> (a) A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of:

*****

(3) Facilitating the commission of any felony or flight thereafter; or

(4) Inflicting physical injury upon him, or of engaging in sexual intercourse, deviate sexual activity, or sexual contact with him;

Ark Code Ann. § 5-11-102(a) (Repl. 1997).

The evidence presented at trial, viewed in the light most favorable to the State, demonstrated that Mr. Britt, along with three of his friends, encountered Mr. Davis and Mr. Hancock at a four-way stop, forced them at gunpoint into the trunk of the Bonneville, drove to the river and forced the two men to strip. They then shot the two men repeatedly, stole their pickup truck and Mr. Davis's billfold, and abandoned the injured men. Mr. Hancock subsequently died as a result of the shooting.

Mr. Britt argues, however, that the trial court erred in failing to direct a verdict on his behalf because his mere presence at the crime scene was insufficient to convict him and the State failed to prove he actually committed the alleged crimes. This argument is without merit. The evidence detailed above demonstrates that Mr. Britt's involvement in the kidnapping of Mr. Davis and Mr. Hancock and in the murder of Mr. Hancock and attempted murder of Mr. Davis went far beyond mere presence. The evidence, when viewed in the light most favorable to the State, revealed that Mr. Britt forced Mr. Davis out of the truck at gunpoint, stole his billfold, threatened to kill him, forced him into the trunk of the Bonneville, followed the Bonneville to the river in the stolen pickup, left the scene with Scotty Hodges, whom Mr. Britt named as the shooter, and was still with Mr. Hodges in the stolen pickup as of 6:00 a.m. when they were seen together by a store clerk.

Even if Mr. Britt did not pull the trigger on the gun that was used to kill Mr. Hancock or to attempt to kill Mr. Davis, the evidence was sufficient to convict him of the murder and the attempted murder as an accomplice.

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

Ark. Code Ann. § 5-2-403 (Repl. 1997).

 The evidence set out above was clearly sufficient to convict Mr. Britt of first-degree murder, attempted first-degree murder, and kidnapping.

## II. Motion to Suppress

Mr. Britt argues in his second point on appeal that the trial court erred by denying his motion to suppress two statements that he made on April 9, 1995, because he was not afforded a reasonable-cause determination within forty-eight hours of his arrest as required by Arkansas Rule of Criminal Procedure 4.1. We disagree.

 "When this court reviews a trial court's ruling on a motion to suppress, we review the evidence in the light most favorable to the State and make an independent determination based upon the totality of the circumstances." *Gilbert v. State*, 341 Ark. 601, 605, 19 S.W.3d 595, 598 (2000) (citing *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999)). We will reverse a trial court's ruling on a motion to suppress only if the ruling was clearly erroneous. *Id.*

Ark. R. Crim. P. 4.1 provides, in relevant part, that:

(a) A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed

(i) a felony

*****

> (e) A person arrested without a warrant shall not be held in custody unless a judicial officer determines, from affidavit, recorded testimony, or other information, that there is reasonable cause to believe that the person has committed an offense. Such reasonable cause determination shall be made promptly, *but in no event longer than forty-eight (48) hours from the time of arrest,* unless the prosecuting attorney demonstrates that a bona fide emergency or other extraordinary circumstance justifies a delay longer than forty-eight (48) hours. Such reasonable cause determination may be made at the first appearance of the arrested person pursuant to Rule 8.1.

*Id.* (Emphasis added.) The mandatory language of Rule 4.1 thus requires that an arrestee be taken before a judicial officer for a reasonable-cause determination within forty-eight hours of arrest. *Id. See also County of Riverside v. McLaughlin,* 500 U.S. 44 (1991). Relying upon this rule, Mr. Britt argues that, because he was not taken before a judicial officer within forty-eight hours, his statements must be suppressed. In response, the State asserts that Mr. Britt was afforded a reasonable-cause determination within forty-eight hours as required by Rule 4.1; but that, even if the reasonable-cause determination was made outside the forty-eight-hour time limit, suppression of the evidence is not the proper remedy.

The evidence presented below pertaining to the time of Mr. Britt's arrest consisted of two St. Francis County police reports, the testimony of Diane Lee, and the prior testimony of Sgt. Crites from the Mississippi County Sheriff's Office. First, Mr. Britt presented the report of Deputy Faulk from the St. Francis County Sheriff's Office, which stated that Deputy Faulk first encountered the stolen pickup truck at approximately 6:50 a.m. and, in the course of events that followed, Mr. Britt was arrested. Deputy Faulk's report did not say what time Mr. Britt was arrested. The prosecutor submitted to the trial court a St. Francis County arrest report stating that Mr. Britt was arrested by Officer Leary at 10:50 a.m. on the charge of theft by receiving. Mr. Britt also introduced the prior sworn testimony of Sgt. Crites of the Mississippi County Sheriff's Office, wherein he testified that he was "not real sure" what time St. Francis County notified him that they had Mr. Britt in custody, but it was during the morning of April 9, 1995, and possibly between 7:00 and 9:00 a.m. Finally, during the course of the trial, Mr. Britt

presented the testimony of his cousin, Diane Lee, who said that Mr. Britt was arrested in her home at approximately 8:00 a.m.[1]

The trial court was faced with conflicting evidence concerning the time at which Mr. Britt was arrested. The parties agreed, however, that a reasonable-cause determination was made two days later, on April 11, 1995, at approximately 9:30 a.m. If the evidence, when viewed in the light most favorable to the State, supports the finding that Mr. Britt was arrested at some time after 9:30 a.m. on April 9, 1995, then we cannot say the trial court clearly erred in denying Mr. Britt's motion to suppress.

■ Among the evidence before the trial court was an arrest report listing the time of arrest as 10:50 a.m. on April 9, 1995. The trial court gave considerable weight to this report and, in fact, weighed its credibility against other evidence. Specifically, the trial court noted, in determining how much weight to afford the St. Francis County arrest report as compared to the testimony of Sgt. Crites, that the "report's by the arresting officer. I think it would have a little more effect than what an officer that wasn't even present in the county would be trying to say." Because the trial court had before it an arrest report that it clearly found to be credible and that stated the time of arrest by St. Francis County was 10:50 a.m., we cannot say the trial court clearly erred when it found that Mr. Britt was afforded a reasonable-cause determination within forty-eight hours of his arrest. Because there has been no violation of Rule 4.1, we need not decide what the appropriate remedy for such a violation would have been.

### III. Lesser-Included Offenses

■ Mr. Britt's final argument on appeal is that the trial court erred by refusing to instruct the jury on the lesser-included offenses of second-degree murder and manslaughter.

---

[1] We recognize that Mr. Britt also introduced the previous trial testimony of St. Francis County Officer Don Partman, who took part in the arrest of Mr. Britt. At the first trial, Officer Partman testified that the arrest occurred "I'll say in between 8:30 and 9:00 o'clock. It was mid morning, I guess; somewhere up in there." However, this evidence was not entered until after the trial court denied the motion to suppress and after the statements were entered into evidence. Furthermore, the trial court discredited this testimony because of its vagueness, noting that Officer Partman was not really certain what time the arrest occurred. He merely knew that it occurred mid-morning.

> It is reversible error to refuse to give an instruction on a lesser included offense when the instruction is supported by even the slightest evidence. *Brown v. State*, 325 Ark. 504, 929 S.W.2d 146 (1996); *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992); *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980). We will affirm a trial court's decision to exclude an instruction on a lesser included offense only if there is no rational basis for giving the instruction. *Brown v. State, supra; Sanders v. State*, 305 Ark. 112, 805 S.W.2d 953 (1991). *Henson v. State*, 296 Ark. 472, 757 S.W.2d 560 (1988).

*Spann v. State*, 328 Ark. 509, 513, 944 S.W.2d 537, 539 (1997); *Cobb v. State*, 340 Ark. 240, 12 S.W.3d 195 (2000).

In the instant case, there was no rational basis to instruct the jury on the lesser-included offenses of manslaughter or second-degree murder. To be entitled to an instruction for manslaughter, Mr. Britt must demonstrate some evidence presented at trial that could support a finding by the jury that he was acting under extreme emotional disturbance, that acted recklessly or negligently, or that he aided another in the commission of suicide. Ark. Code Ann. § 5-10-104 (Repl. 1997). No such evidence was presented.

▮ Similarly, to be entitled to an instruction on the lesser-included offense of second-degree murder, Mr. Britt must be able to point to evidence in the record that supports a finding that he acted with a "knowing" mental state rather than a "purposeful" mental state or that he and his accomplices acted with the intent of only causing serious physical injury. Ark. Code Ann. § 5-10-103 (Repl. 1997). All of the evidence presented at the trial in this matter indicated that Mr. Britt or an accomplice placed a gun against Mr. Hancock's head and pulled the trigger at point-blank range twice, once on the forehead, once on the top of the head. Furthermore, all of the evidence presented tended to demonstrate that Mr. Britt and his accomplices carried out the murder of Mr. Hancock and the attempted murder of Mr. Davis in an execution-like manner. There was no evidence in the record that demonstrated Mr. Britt or his accomplices acted with any mental state other than with the purpose of causing the deaths of both Mr. Hancock and Mr. Davis. Therefore, the trial court did not err by refusing to instruct the jury on the lesser-included offenses of manslaughter and second-degree murder.

## IV. 4-3(h) review

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.