Denaro Shatour COOK *v.* STATE of Arkansas

CA CR 01-368 73 S.W.3d 1

Court of Appeals of Arkansas
Division IV, I, and II
Opinion delivered March 20, 2002

*Arkansas Public Defender Comm'n,* by: *Llewellyn J. Marczuk* and *Lott Rolfe, IV,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Denaro Cook appeals from his convictions as an accomplice to first-degree murder, aggravated robbery, and misdemeanor theft of property. He argues that the trial court erred in 1) denying his motions for a

directed verdict on all charges; 2) failing to declare two witnesses as accomplices and in admitting their uncorroborated hearsay testimony; and 3) refusing to give jury instructions for the lesser included charges of robbery and felony manslaughter. We hold that any error committed by the trial court was harmless error, and affirm.

Appellant was charged as an accomplice to capital murder, aggravated robbery, and felony theft of property in connection with a murder that occurred during the April 13, 1999 robbery of Western Sizzlin', a restaurant located on Rodney Parham Road in Little Rock. Appellant and his brother, Torian, were employed as servers at the restaurant and were working on the night of the incident. It is undisputed that on April 13, the restaurant was robbed by their brother, Keyono Cook, also known as "Buck," and by a friend of appellant's, Frank Barnes. David Nichols, the manager of the restaurant, was shot and killed during the robbery.

Keyono Cook and Frank Barnes were former employees of the restaurant. On the evening of April 13, Frank, Rodney Barnes (Frank's brother), Nakia Hall (Frank's girlfriend), Tim Dillard, and Keyono met at Franke's, another restaurant located·on Rodney Parham. Keyono drove appellant's car and Frank drove his own car. Keyono had a gun and a mask and indicated that he was going to rob Franke's. However, he abandoned that plan because he concluded the area was too well-lit. Their group then went to Western Sizzlin'.[1]

The testimony by appellant's co-workers and other witnesses established that the group arrived at the restaurant shortly before closing. Appellant went outside and talked to Keyono two times, and appellant at one point motioned for them to come in. Keyono and Frank subsequently entered the restaurant through the back door and took an undetermined amount of money in a bank bag. Keyono later dumped the gun and went to Frank's house to divide the money.

---

[1] The witnesses' testimony conflicts with regard to which parties rode in which car to Western Sizzlin'. However, the testimony seems clear that after the robbery, Rodney Barnes remained at the restaurant, and the rest of these individuals left together in Frank's vehicle.

During the trial, appellant objected to Dillard's testimony. The State sought to have Dillard testify that after Keyono spoke with appellant the second time, he got back into his car and stated that appellant told him that everything was set up inside and that the back door was unlocked. Appellant objected that this was hearsay, and the trial court overruled his objection on the basis that it was admissible under Arkansas Rule of Evidence 801(d)(2)(v), as a declaration of a co-conspirator during the progress of a crime.

At the close of the State's evidence, appellant moved for a directed verdict on all charges, arguing that the testimony of Dillard and Rodney Barnes was not corroborated and that the State had no evidence to independently connect appellant with the crime. He also asked that the court declare Dillard and Barnes to be accomplices as a matter of law. The trial court reduced the felony theft of property charge to a misdemeanor. However, the court declined to rule Dillard and Barnes accomplices as a matter of law. It also denied the motions for a directed verdict with respect to the remaining charges. Appellant thereafter testified. He denied any participation in the planning or execution of the robbery and asserted that he tried to discourage his brother (Keyono Cook) from committing the robbery. He renewed his motions at the close of all of the evidence and requested that the trial court instruct the jury on the lesser-included offenses of robbery and felony manslaughter. Although the trial court denied these motions, it provided an instruction on the lesser charge of first-degree murder.

The jury found appellant guilty as an accomplice to aggravated robbery and to the reduced charges of first-degree murder and theft of property. He was sentenced to serve ten years on the murder charge, ten years on the aggravated robbery charge to run consecutively with the murder charge, and six months on the theft of property charge to run concurrently with the other two charges, for a total of twenty years in prison.[2]

---

[2] The State filed a notice of cross-appeal with regard to the trial court's ruling sustaining appellant's objection to a *voir dire* question posed by the State during jury

## I. Summary of the Testimony

Kyona Hyder was working at the restaurant the night of the robbery. She noticed that the back doors were unlocked, which she said was unusual. She witnessed Frank running at the side of the building toward the back of the building. When she asked appellant if he saw Frank running to the back of the restaurant, appellant told her that Frank had to use the restroom. Hyder also saw Frank and Keyono inside the restaurant by the utility closet in the back of the restaurant, near the manager's office. She said that · Keyono had a ski mask on top of his head. When she asked what they were doing, Keyono gestured for her to be quiet. She said that she asked appellant if he saw Keyono back there. Hyder said later in the evening appellant told her that he thought Keyono had killed Nichols. Because appellant had an apparent propensity for joking, he showed Hyder that his hands were shaking, so she would know he was "for real." She testified that either appellant or his brother, Torian, told her before she left the restaurant not to say anything regarding the robbery.

Sharronda Arnold, another coworker, testified that she saw Keyono and Frank Barnes pull up and park in two separate cars. She stated that Nakia and Rodney Barnes were also with Frank. According to Arnold, Torian went outside, then came back in and talked to appellant. When Torian came back in, he said that Keyono was going to rob the place and asked Torian if he robbed the place would anyone "snitch" on him.

Arnold further testified that after Torian came back inside and talked to appellant, appellant then went outside and talked to Keyono for approximately ten minutes and made hand motions that appeared to her to be indicating, "Come in." Appellant then returned and walked to the back of the restaurant. Arnold stated that appellant told her they were going to rob the restaurant, but he was laughing and she thought he was kidding. After that, she saw Keyono and Frank walk to the side of the building where the back doors were located. She heard some loud bangs, but she

selection. However, the State offers no argument in this regard in its brief. Therefore, we do not address this issue.

thought that someone had dropped trays. When she went toward the back of the restaurant, she saw Keyono running toward the back door and saw Frank going the opposite direction. She said that Keyono was wearing a black mask and was carrying a green money bag and carried something that looked like a gun. Arnold further stated that Rodney Barnes came inside the restaurant while the employees were looking for Nichols. She said that appellant told her that they had killed Nichols. While they were waiting for the police, appellant told her to tell the police that she did not know anything.

Tim Dillard testified that he, Frank, Nakia, and Keyono rode together to the restaurant and that Rodney Barnes arrived in a separate vehicle. Dillard stated that it was Keyono's idea to go to Western Sizzlin'. He said that Keyono got out of his car and talked to Rodney, then appellant came outside two times and talked to Keyono. After the second time, Keyono got back inside the car and said that appellant told him that the back door was open, it was clear to go in, and business was slow. Then, Keyono got a gun and a mask and went into the back of the restaurant.

Dillard further testified that Frank came out through the front door. When Frank got into his car, he said that Keyono shot someone. Frank proceeded to drive away, but stopped to pick up Keyono, who had come out of the restaurant and was waving the bank bag behind him. Dillard stated that Frank stopped the car and picked up Keyono, who dumped the gun in a sewer on 15th and Pulaski Street, behind Church's Fried Chicken. After Keyono dumped the gun, they had trouble getting the car started again. Dillard said that he steered the car while others pushed the car to get it started again. When they got the car started again, they then went to Frank's house to count the money. According to Dillard, Keyono took the money out of the bag and counted out approximately $1,800 to $2,100. He said that Keyono gave Frank a "lump sum" of money and kept the rest. Dillard denied that he received any money. He said that Keyono threatened to "take care" of anyone who told the police what happened. He also said that appellant later told him that he was going to "handle" him because he "snitched."

Rodney Barnes testified that he rode to Western Sizzlin' with Keyono in appellant's car. He said that Frank arrived in a separate car. He said that Torian came outside first and Keyono told him that they were going to rob the restaurant. Rodney stated that Torian tried to discourage Keyono and Keyono seemed to agree that it was a bad idea. Rodney said that appellant came outside then and told Keyono that the back door was open, that the manager was in the office counting the money, and to go on in. According to Rodney, Keyono was "all hyped up" and "did not hesitate" after appellant spoke with him. He said that Keyono got a mask and a gun, and went in the back of the building, with Frank following thereafter. About fifteen minutes later, Frank came out the front doors and left in his car. At this point, Rodney went inside. He said when he got inside, appellant told him, "Don't say nothing." Rodney testified that Arnold stated, "If we just got robbed, David will come out and call the police. He might be dead," to which appellant responded, "I don't care. We got to pay our rent."

Rodney further testified that he accompanied Keyono to Andrew O'Conner's house a few days prior to the robbery, to get a mask. Rodney stated, "He got the mask so he can rob somebody. I knew Buck was going to rob somebody." However, he testified that appellant never saw the gun or the mask, because they were in the trunk when appellant came outside to talk to Keyono.

Joseph Williams testified that early on April 14, 1999, Keyono was at his house and appellant, Torian, and Rodney Barnes came over. Williams testified that Rodney requested his share of the money.

Nakia Hall, Frank Barnes's girlfriend, testified that Frank and Tim picked her up from work at K-Mart that night. She said that when the car stopped after the robbery, Frank, Dillard, and Keyono pushed the car to get it started again. She also stated that Dillard was present when the money was counted.

Testimony by other witnesses established that a money bag containing checks stolen during the robbery and a mask were

recovered at Interstate Park and the gun was recovered in a storm drain at 15th and Pulaski.

Dr. Stephen Erickson, an associate medical examiner from the Arkansas Crime Laboratory, testified that Nichols received two gunshot wounds, one in the chest and one which went through his right wrist to his abdomen. He said that Nichols's right wrist had stippling marks, indicating that it was within six inches to one foot of the gun when it was discharged. However, the bullet wound to the chest showed no evidence of close range of fire. Erickson could not state definitively whether the stippling marks on Nichols's wrist indicated that he was in an aggressive or defensive posture when the gun was discharged.

Appellant also testified. He denied participating in any way in the robbery or the murder. He admitted that he knew the back doors were unlocked, but he assumed that the manager knew they were unlocked. He testified that when he went outside the first time, he told Keyono that he would be out after they rolled some more silverware. He said that while he was talking to Arnold, Torian came in and told him that Keyono was wondering if they would get caught if they robbed the restaurant and suggested that appellant go talk to him. Appellant said that he told Keyono that he would get caught and that Keyono should leave his car there and leave the premises. He maintained that at this point, he went into the back of the store to talk to one of the dishwashers and did not see Keyono any more. Appellant said that after he talked to the dishwasher, he told Arnold that Keyono "and them" were "talking about robbing the place." He admitted that he told Arnold not to tell anyone because he assumed his brother would get into trouble by merely talking about committing a robbery. He also admitted that he heard the gunshots and told Arnold that he thought Keyono and Frank had killed Nichols.

Appellant remained at the restaurant until after the police came. On his way home, Keyono paged him to come to Joe Williams's house. When he entered Williams's house, he said Keyono asked him, "Did dude die?" Appellant denied threatening anyone and denied telling Keyono that he could slip in the back of the

restaurant. To the contrary, he asserted that he was the "hero" because he tried to prevent the robbery.

## II. Sufficiency of the Evidence

■■■ Appellant first argues that no substantial evidence supports his convictions because the only evidence used against him was based on the uncorroborated testimony of Barnes and Dillard, whom he asserts should have been declared accomplices as a matter of law. We consider the sufficiency of the evidence before evidentiary errors in order to protect a defendant's right to be free from double jeopardy. *See, e.g., Goodman v. State,* 74 Ark. App. 1, 45 S.W.3d 399 (2001). In conducting this review, we examine all of the evidence, including that evidence allegedly admitted erroneously, and review the evidence in the light most favorable to the State. *See, e.g., Willingham v. State,* 60 Ark. App. 132, 959 S.W.2d 74 (1998). A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, whether direct or circumstantial. *See Killian v. State,* 60 Ark. App. 127, 959 S.W.2d 432 (1998). We will affirm if there is substantial evidence to support a verdict. *See Ryan v. State,* 30 Ark. App. 196, 786 S.W.2d 835 (1990). Evidence is sufficient to support a verdict if it is forceful enough to compel a conclusion one way or another. *See Hall v. State,* 315 Ark. 385, 868 S.W.2d 453 (1993).

Appellant was convicted of acting as an accomplice to first-degree murder because the murder took place in furtherance of an underlying felony, an aggravated robbery. He was also charged with misdemeanor theft. We hold that substantial evidence supports that appellant acted as an accomplice in committing each of these crimes.

■■■ A person commits robbery if he, with the purpose of committing a felony or misdemeanor theft employs or threatens to employ physical force upon another person. *See* Ark. Code Ann. § 5-12-101(a) (Repl. 1997). A person commits aggravated robbery if he commits robbery and he is armed with a deadly weapon or represents by word or conduct that he is so armed; or inflicts or

attempts to inflict death or serious physical injury upon another person. *See* Ark. Code Ann. § 5-12-103 (Repl. 1997). Although there were no witnesses to the actual robbery, we hold that the various witnesses' testimony provided substantial evidence that the culprits were armed. Various witnesses saw Keyono take a gun into the restaurant, two witnesses heard loud banging noises, the manager was shot and killed, and witnesses testified that Keyono dumped the gun in a sewer, where it was later recovered. Further, Keyono was seen running out of the restaurant carrying a money bag and later counting money from the money bag. Therefore, substantial evidence supports that an aggravated robbery took place.

██ This same evidence supports a conviction for first-degree murder. Pursuant to Arkansas Code Annotated section 5-10-102(a)(1) (Repl. 1997):

> (a) A person commits murder in the first degree if:
>
> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life.

It is undisputed in this case that Nichols, the manager of the restaurant, was killed during the robbery attempt. The testimony of the witnesses supports that Keyono Cook shot Nichols and is sufficient to demonstrate that the offense of first-degree murder was committed.

██ The evidence is also sufficient to support the reduced charge of misdemeanor theft. Pursuant to Arkansas Code Annotated section 5-36-103 (Repl. 1997):

> (a) A person commits theft of property if he:
>
> (1) Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof; or

(2) Knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.

. . .

(b)(4) Theft of property is a Class A misdemeanor if the value of the property is $500 or less.

Several witnesses testified that Keyono had a money bag when he left the restaurant. Further, Dillard testified that Keyono removed the money from the bag and counted between $1,800 and $2,100. Based on this testimony, the trial court found could have properly found that the evidence was sufficient to prove that an amount under $500 was taken. We find no error in this regard.

■ The next issue is whether there was sufficient evidence to find appellant guilty as an accomplice to these crimes. An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of the offense, aids, agrees to aid, or attempts to aid the other person in the planning or committing of the offense. *See* Ark. Code Ann. §§ 5-2-403(a)(1)-(2) (Repl. 1997). When two or more persons assist each other in the commission of a crime, each is an accomplice and is criminally liable for his own conduct as well as that of the other person's conduct, even though he did not personally take part in every act. *See Phillips v. State,* 17 Ark. App. 86, 703 S.W.2d 471 (1986). The relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in the proximity of the crime, the opportunity to commit the crime, and an association with a person involved in the crime in a manner suggestive of joint participation. *See id.*

■ Here, viewing the evidence in the light favorable to the State (as the prevailing party at trial) and giving deference to the jury's apparent findings of witness credibility, there was overwhelming evidence that appellant acted as an accomplice. Appellant's brother, one of the culprits, drove appellant's car to the crime scene. Appellant verified for his brother that the back door was open, and informed him that the business was slow, the manager was counting the money, and that he should come in. He

also instructed or warned other witnesses not to talk to the police. Finally, he believed that the proceeds of the robbery would be partially used for his benefit, to pay the rent. On these facts, we hold that the trial court did not err in denying appellant's motions for a directed verdict with respect to each charge.

### III. Corroboration of Accomplice Liability

■ Appellant's next argument is that the trial court erred in not declaring Dillard and Rodney to be accomplices, and in admitting their uncorroborated hearsay testimony. A conviction cannot be had in any felony case upon the testimony of an accomplice unless other evidence tending to connect the defendant with the commission of the offense corroborates the accomplice's testimony. *See* Ark. Code Ann. § 16-89-111(e)(1) (1987). The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. *See* Ark. Code Ann. § 16-89-111(e)(1) (1987). The test for determining the sufficiency of corroborating evidence is whether the remaining evidence independently establishes the crime and tends to connect the accused with its commission. *See Meeks v. State*, 317 Ark. 411, 878 S.W.2d 403 (1994).

■ First, we note that appellant offered no objection to Rodney's testimony when Rodney testified. Instead, he merely waited until the close of the evidence and requested that the court declare Rodney to be an accomplice. Therefore, he waived his objection to Rodney's testimony in this regard. *See Harris v. State*, 262 Ark. 506, 558 S.W.2d 143 (1977) (holding issue of the suffi-. ciency of corroborating testimony of accomplice was waived where the requirement of corroboration was not raised to the trial court).

■ ■ Second, even if the trial court erred in not declaring Dillard and Rodney to be accomplices, the error is harmless, because the remaining evidence is sufficient to independently establish the crime and to connect appellant with its commission. We may affirm where evidence of guilt is overwhelming and the error is slight. *See Bledsoe v. State,* 344 Ark. 86, 39 S.W.3d 760 (2001). It is true that the remaining evidence does not cor-

roborate that appellant made the inculpatory statements attributed to him by Dillard and Rodney. However, the testimony by Hyder, Arnold, appellant, and the remaining witnesses independently corroborates the evidence establishing that the offenses were committed and establishing appellant's connection to the commission of those offenses.

 Similarly, because the remaining evidence is sufficient to support the charges, the trial court committed harmless error in admitting Dillard's testimony as a co-conspirator pursuant to Arkansas Rule of Evidence 801(d)(2)(v) without declaring him to be an co-conspirator.

## IV. Jury Instructions

Appellant was originally charged as an accomplice to capital felony murder and aggravated robbery. He was found guilty of aggravated robbery and of the reduced charge of first-degree murder. His final argument is that the trial court erred in denying his request for jury instructions on the lesser included offenses of robbery and felony manslaughter. He maintains that the trial court erred because there was evidence from which a jury could have found him guilty of these lesser charges. We disagree.

### A. First-Degree Felony Manslaughter

At trial, appellant proffered instructions on first-degree felony manslaughter on the theory that a jury could have determined that Keyono could have acted negligently in causing Nichols's death because there was evidence to support that he was shot when the gun was discharged during a struggle.

 A trial court's ruling on whether to submit jury instructions will not be reversed absent an abuse of discretion. *See Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001). It is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *See Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). We will affirm a trial court's decision to exclude an instruction on a lesser-included offense only if there is no rational basis for giving the instruction. *See id.* Where the defendant relies on the defense of

complete denial, there is no rational basis for giving instructions on lesser-included offenses and the trial court is correct to refuse such instructions. *See Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993); *Martin v. State*, 46 Ark. App. 276, 879 S.W.2d 470 (1994).

A person commits capital murder if he commits robbery and in furtherance of the robbery, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life. *See* Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997). A person commits murder in the first degree if he commits a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life. *See* Ark. Code Ann. § 5-10-101(a)(1). A person commits felony manslaughter if he commits a felony and in the course of and in furtherance or the felony or in immediate flight therefrom he or an accomplice negligently causes the death of any person. *See* Ark. Code Ann. 5-10-104(a)(4).

Appellant maintains that in *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2000), the Arkansas Supreme Court held that felony manslaughter is a lesser-included offense of capital felony murder and first-degree felony murder, and can be submitted as a lesser instruction if the evidence presented would support a finding that the defendant, or an accomplice acted negligently. Citing *Coleman v. State*, 12 Ark. App. 214, 671 S.W.2d 221 (1984), he argues that to sustain the charge of capital murder, first-degree murder or felony manslaughter, the State must prove two culpable states — one for the underlying felony and one for the death that occurred. He further asserts that felony manslaughter contains essentially the same language, but has a lower degree of culpability as it relates to death.

 Appellant's argument is unpersuasive. First, he denies any involvement in the crime; therefore, there is no rational basis for the trial court to provide an instruction on the lesser-included offense. *See Vickers v. State, supra; Martin v. State, supra.* Second, as the State notes, the Arkansas Supreme Court has recently

rejected appellant's argument in *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001). In *Hill, supra*, our supreme court held that felony manslaughter adds an additional element to felony murder relating to the perpetration of the murder itself and therefore, is not a lesser-included offense of capital murder or first-degree murder.

In *Hill*, the defendant was charged with aggravated robbery and attempted capital murder. The *Hill* defendant, like appellant here, received a jury instruction on capital murder and first-degree murder. The *Hill* defendant also requested an jury instruction on felony manslaughter on the theory that he had negligently caused the death of the victim. *See id.*

The *Hill* court affirmed the trial court's refusal to issue the instruction on felony manslaughter, holding that the only culpable mental state where the murder is committed during a felony relates to the crime of the underlying felony and not to the murder itself. That is, to sustain a conviction for capital murder or first-degree felony murder, the State must only prove the mental state relating to the underlying felony. *See id.* Therefore, the *Hill* court found that felony manslaughter, in which a death is negligently committed in the course of a felony, is not a lesser-included offense of capital murder or first-degree murder because it adds an additional element to the crime charged — the mental state relating to the commission of the murder. *See id.* The *Hill* court also stated that felony manslaughter did not represent a less serious injury to the victim because death still results. Finally, the *Hill* court stated that felony manslaughter did not represent a lesser culpable mental state because the mental state to perpetrate robbery is the same for capital felony murder and manslaughter.[3] Therefore, pursuant to *Hill*, appellant was not entitled to a jury instruction on the theory that his accomplice acted negligently.

Finally, appellant's reliance upon *Britt v. State, supra*, is misplaced. The defendant in that case was charged with attempted

---

[3] Moreover, as the State notes, to hold as appellant urges would lead to an absurd result, because a person who negligently caused the death of another person would be guilty of only a Class C felony, while the armed robber who does not cause death would guilty of a Class Y felony.

first-degree felony murder and first-degree murder. He argued the trial court erred in not providing instructions on second-degree murder and manslaughter. The *Britt* court did not state that a defendant charged with first-degree felony murder is entitled to an instruction on felony manslaughter. The *Britt* court merely found that there was no rational basis for giving the instruction in that case because there was no evidence that the defendant acted under extreme emotional disturbance, or acted recklessly or negligently.[4]

 Based on these authorities, we hold that the trial court did not err in denying appellant's request for an instruction on felony manslaughter.

### B. Aggravated Robbery

Finally, we hold that the trial court did not err in denying an instruction on the lesser-included offense of robbery. Appellant maintains that he was entitled to such an instruction because a jury could have found that he did not know that Keyono had a gun. The State counters that appellant denied any participation in the robbery; therefore, an instruction on a lesser-included charge was not warranted. The State further asserts that where it is undisputed that an armed robbery took place, the lesser-included instruction on robbery is not necessary. *See Young v. State*, 283 Ark. 435, 678 S.W.2d 329 (1984).

 Robbery occurs when a person, with the intent of committing theft or resisting apprehension, uses or threatens to immediately use physical force upon someone. *See* Ark. Code Ann. section 5-12-102(a) (Repl. 1997). A person commits the offense of aggravated robbery when he commits robbery and is armed with a deadly weapon or represents to his victim by word or conduct that he is armed. *See* Ark. Code Ann. § 5-12-103(a)(1) (1993). It is clear under our case law that robbery is a

---

[4] However, we note that the *Britt* holding implies that a defendant who presented such evidence might be entitled to such an instruction. While the supreme court in *Hill* did not state that it was overruling *Britt*, because *Hill* was decided subsequent to *Britt*, it would seem that to the extent that *Britt* is inconsistent with *Hill*, it would be overruled by implication.

lesser-included offense of aggravated robbery. *See Lovelace v. State*, 276 Ark. 462, 637 S.W.2d 548 (1982).

The State's reliance on *Young v. State, supra,* is misplaced. Our law clearly recognizes that a person charged as an accomplice to aggravated robbery may be entitled to an instruction on the lesser-included offense of robbery, even where it is undisputed that a weapon was used. *See, e.g., Savannah v. State*, 7 Ark. App. 161, 645 S.W.2d 694 (1983). Although a defendant's liability may be limited to that of an accomplice to mere robbery if the other person, without the defendant's knowledge, commits a robbery using a weapon, *see Savannah v. State, supra,* that is not the case here. Appellant did not assert that he agreed to participate in a robbery and that unbeknownst to him, Keyono and Frank used a gun. Rather, he denies *any and all* participation in the robbery and even argues that he is a "hero" because he tried to prevent the robbery.

As previously noted, it is reversible error to refuse to give an instruction on a lesser included offense when the instruction is supported by even the slightest evidence, and we will affirm a trial court's decision to exclude an instruction on a lesser-included offense where there is no rational basis for giving the instruction. *See Britt v. State, supra.* Given this standard, we hold that the trial court did not err in refusing to give an instruction on the lesser-included-offense of robbery. First, the court did not err because appellant denied any participation in the robbery. *See Vickers v. State, supra; Martin v. State, supra.*

Second, appellant's reliance upon *Waggle v. State*, 50 Ark. App. 198, 901 S.W.2d 862 (1995), is misplaced. In *Waggle,* the defendant admitted that she participated in the robbery. However, she denied that she knew the defendant had a gun. The *Waggle* defendant aided her boyfriend in robbing a store, by going into the store two times on the pretext of purchasing candy, and then reporting to her boyfriend how many customers were in the store. *See id.* After he exited the store waving money and brandishing a pistol, she complied with his orders to drive away. The defendant maintained that she did not know why her boyfriend wanted her to go into the store and report on the number of cus-

tomers. The *Waggle* court found that an instruction on robbery was warranted because a jury could believe that she assisted in the commission of the robbery, but that she was unaware that her boyfriend possessed a gun. *See id.*

 Unlike the defendant in *Waggle*, appellant here denied any participation in the robbery. Therefore, the trial court had a rational basis for denying his motion for a lesser-included instruction on robbery and did not abuse its discretion.

Affirmed.

STROUD, C.J., JENNINGS, VAUGHT, and ROAF, JJ., agree.

PITTMAN, HART, ROBBINS, and NEAL, JJ., concurring in part and dissenting in part.

JOHN B. ROBBINS, Judge, concurring in part; dissenting in part. I agree with the majority that the trial court committed no error in denying appellant's motions for directed verdicts, in refusing to declare two witnesses as accomplices and in admitting their testimony, and in refusing to instruct the jury on felony manslaughter. However, I agree with appellant's argument that the trial court erred in failing to give a jury instruction for the lesser-included offense of robbery. Therefore, I concur with the majority in affirming appellant's convictions as an accomplice to first-degree murder and misdemeanor theft of property, but I would reverse and remand his conviction for aggravated robbery.

The majority holds that because appellant completely denied any involvement in the crime, he was not entitled to a lesser-included instruction on robbery. I disagree. Stated affirmatively, this rationale would require a defendant to confess to criminal involvement in order to be entitled to a lesser-included offense instruction. Surely, such is not the law, and should not be the law if it is.

Appellant's argument is supported by *Waggle v. State*, 50 Ark. App. 198, 901 S.W.2d 862 (1995). In that case the appellant was convicted as an accomplice of aggravated robbery after she participated with her boyfriend in robbing a convenience store. Although the appellant denied assisting with the robbery, we

reversed the trial court and held that there was a rational basis for a robbery instruction. We stated:

> Ms. Waggle denied having any knowledge that her boyfriend was going to rob the convenience store, and further stated that she was unaware that he possessed a gun. The trier of fact has the right to resolve inconsistencies in the testimony of a witness and may believe or disbelieve any portion of that testimony. *See Oller v. Andrews*, 233 Ark. 1017, 350 S.W.2d 167 (1961). In the case at bar, the jury was entitled to believe Ms. Waggle's assertion that she did not know her boyfriend was carrying a gun, while disbelieving her claim that she did not assist in the commission of the robbery. Therefore, the trial court erred in refusing to give an instruction on robbery.

*Waggle v. State*, 50 Ark. App. at 202, 901 S.W.2d at 864. In the case at bar, there was no evidence that appellant ever saw a gun or knew his brother intended to use one in committing the crime. Therefore, there was a rational basis from which the jury could have concluded that he committed only robbery.

The majority distinguishes this case from *Waggle v. State, supra*, because, unlike the defendant in that case, appellant here denied any participation in the robbery. I do not agree that such a distinction exists because, while the appellant in each case gave testimony from which a jury could infer criminal activity, neither admitted to any crime. As the majority opinion indicates, while the appellant in *Waggle v. State, supra*, admitted to entering the convenience store to count customers, she maintained in her testimony that she did not know why her boyfriend had asked her to do this. In the instant case, appellant admitted some involvement in that he admonished others to withhold information about the robbery and was not truthful when questioned by the police, but he, too, denied any willing participation in the robbery.

In *Brown v. State*, 321 Ark. 413, 903 S.W.2d 160 (1995), our supreme court held that it is not error to refuse or fail to instruct on the lower offense where the evidence clearly shows that the defendant is either guilty of the greater offense charged or innocent. Such was the case in *Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993), and *Martin v. State*, 46 Ark. App. 276, 879 S.W.2d 470 (1994), cited by the majority. In each of those cases

the appellant was convicted as a principal of first-degree murder, each appellant completely denied committing the murder, and there was no evidence to support the commission of a lesser crime. In *Vickers v. State, supra,* and *Martin v. State, supra,* it was an "all or nothing situation," so there was no rational basis to give the proferred instructions on lesser homicide offenses.

The case at hand is far from an "all or nothing" situation as regards appellant's aggravated robbery conviction. Not only was there a lack of evidence that appellant knew his brother was armed prior to the robbery, there was affirmative testimony that he did not know. Rodney Barnes indicated that, after appellant told Keyono the back door was open, appellant went back in the restaurant and remained there until after the robbery was committed. Rodney further testified that appellant could not have seen the gun because it was retrieved from the trunk after appellant had reentered the restaurant.

An instruction on a lesser-included offense should be given when the instruction is supported by even the slightest evidence, but we will affirm a trial court's decision to exclude an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Ellis v. State,* 345 Ark. 415, 47 S.W.3d 259 (2001). In this case, there was more than the "slightest evidence" to support a finding that appellant was an accomplice to robbery, but not to aggravated robbery. The jury alone determines credibility of witnesses, apportions weight to be given to evidence, and resolves any questions of conflicting testimony and inconsistent evidence. *Parker v. State,* 333 Ark. 137, 968 S.W.2d 592 (1998). In this case there was a rational basis for giving the robbery instruction because the testimony of Rodney Barnes, if believed by the jury, demonstrated that while appellant may have conspired in the robbery, he was unaware that his brother was armed with a deadly weapon.

I am not unmindful of our supreme court's opinion in *Doby v. State,* 290 Ark. 408, 720 S.W.2d 694 (1986), where the appellant was denied lesser-offense instructions and was convicted of possession of a controlled substance with intent to deliver and theft by receiving a pistol. However, in that case the appellant testified

that he was unarmed and was not in possession of drugs when he was attacked by the police, and in affirming, the supreme court stated:

> Doby rested his entire defense on his credibility against that of the officers. So as a practical matter, it came down to whom should the jury believe. There would be no rational basis to find the officers lied in part in this case. Their testimony so sharply conflicted with Doby's that it would not be reasonable to expect a jury to pick and choose and come up with a finding of a lesser offense when to do so would require a finding that Doby was a liar and the officers liars in part. If Doby had admitted possessing the drugs, it might make sense to require the charge of the lesser offense. But his defense was that he was entirely innocent of any crime; he possessed nothing. Therefore, the jury only had one question to decide, whether he was guilty as charged.

*Doby v. State*, 290 Ark. at 412, 720 S.W.2d at 696.

In my view, there is a material distinction between *Doby v. State, supra*, and the case at bar. The instant case does not present a situation where the jury is left to decide between two sharply conflicting accounts. There was evidence, in the form of Rodney Barnes's testimony, that appellant was neither entirely innocent nor entirely guilty.

In *Savannah v. State*, 7 Ark. App. 161, 645 S.W.2d 694 (1983), we held that where the evidence showed that appellant aided or advised another in planning or committing a robbery but that the other person committed the greater offense of aggravated robbery, appellant's liability is limited to the lesser offense of robbery. Because there was, at a minimum, the slightest evidence that Denaro Cook aided in committing a robbery but an aggravated robbery was thereafter committed, I would hold that the trial court abused its discretion in denying his request for a jury instruction on the lesser-included offense of robbery.

PITTMAN, HART, and NEAL, JJ., join in this opinion.