SLIP OPINION

Cite as 2014 Ark. 201

# SUPREME COURT OF ARKANSAS

No. CR-13-655

| | |
|---|---|
| SANDRA NANCE<br>APPELLANT/<br>CROSS-APPELLEE<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE/<br>CROSS-APPELLANT | **Opinion Delivered** MAY 8, 2014<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. CR-12-394-2]<br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br>AFFIRMED IN PART AND DISMISSED IN PART; CROSS-APPEAL DISMISSED. |

**DONALD L. CORBIN, Associate Justice**

This appeal stems from Appellant Sandra Nance's conviction and sentence on multiple counts of animal cruelty, as well as entry of a supplemental order determining the costs of care and custody of dogs seized from Nance's property. Nance argues the following points on appeal: (1) the circuit court erred in denying her motion to suppress evidence gathered from a search of her property; (2) Arkansas Code Annotated section 5-62-106 (Supp. 2011), governing the seizure of animals, violates the Fourteenth Amendment to the United States Constitution, and article II, section 8 of the Arkansas Constitution because it allows the taking of property without due process of law; (3) section 5-62-106 violates article IV, section 2, and amendment 80, section 3 of the Arkansas Constitution because it invades this court's authority to establish rules governing practice and procedure of the courts; and (4) the circuit court erred in refusing to order that all of the seized dogs be returned to her. The State cross-

appeals, arguing that the circuit court erred in returning those dogs to Nance, which she had not been convicted of abusing, because she had not paid all reasonable expenses for their care as required by section 5-62-106. We assumed jurisdiction of this appeal because it implicates constitutional questions and issues of statutory interpretation; hence, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(1) and (b)(6) (2013). We affirm the order of the circuit court denying Nance's motion to suppress evidence, but dismiss the appeal and cross-appeal of the circuit court's supplemental order.

The record reflects the following facts. On June 26, 2012, an anonymous caller notified employees at the Pulaski County Humane Society (PCHS) that there were dogs at a location on Sentell Loop in Austin that were housed in the sun, with no access to shade, and in excessively hot temperatures. PCHS referred the caller to the Lonoke County Sheriff's Office. An employee of Cabot Animal Services then contacted PCHS and stated that someone had also called there about the condition of some animals at that same location. Kay Simpson, Director of PCHS and also a certified cruelty investigator, asked her board president, Christine Henderson, to drive by the location and check on the dogs. After Henderson expressed some concern, a decision was made that Simpson and Dr. Teresa Medlock, a PCHS veterinarian, would go to the property to see if they could offer the owners any assistance with the dogs.

Two days later, Simpson, Henderson, her husband Jack Henderson, and Dr. Medlock traveled to the Nance property. While en route, Simpson contacted the Lonoke County Sheriff's Office for assistance, and Sgt. Dennis Sanderson was dispatched to assist the group.

Cite as 2014 Ark. 201

Simpson also contacted Nance and asked her to meet them at her property. At that time, Nance was working in a store she owned, "Smoochie Poochies," located in Searcy, where she sold puppies and dogs from her kennel. When Nance arrived, Simpson told her about the calls they had received and asked Nance if they could walk through the kennel. Nance agreed and during the walk-through, Simpson noticed that many of the cloths used to provide shade for the dogs were tattered, shredded, and hanging down in the cages. She also noticed some large fans through the area that were not working, and one working fan that was tilted upward. When asked, Nance stated that the fans had stopped working a couple of days prior. Simpson also noticed a misting system that was not spraying the dogs. Simpson also noticed that while some of the dogs had clean water bowls, others had pale-green-tinted water or dark green, blackish water.

While investigating, Simpson and Dr. Medlock both noticed that a lot of the dogs were panting but were not barking much, and others were lying in holes they had dug to stay cool.[1] The women also noticed that a large number of the dogs were "brachycephalic dogs," meaning they have smaller snouts and have a harder time breathing in extreme heat or cold. They also noticed that some dogs had extremely matted fur, which added to the dogs' heat stress. Simpson and Dr. Medlock both expressed concern about the dogs' well-being and thought it was best to remove the dogs from the property. As a result, Sergeant Sanderson contacted the Lonoke County prosecutor, who then came to the Nance property. After

---

[1]The temperature that day reached 110 degrees.

seeing the dogs and the conditions of the kennel, the prosecutor authorized PCHS to seize all the dogs on the property.[2]

Nance was charged by information in the Lonoke County Circuit Court with three felony counts of aggravated cruelty to animals, in violation of Arkansas Code Annotated section 5-62-104, and ten misdemeanor counts of cruelty to animals, in violation of Arkansas Code Annotated section 5-62-103. During the pendency of the criminal action, the State filed a "Motion for Divestment of Custody," pursuant to section 5-62-106, asking that custody of the dogs be placed with PCHS, which was caring for the dogs. This motion was filed in the criminal action, with its corresponding criminal-docket number. Nance filed a response to the State's motion and her own "Petition to Determine Custody," pursuant to section 5-62-106, both also filed with the criminal-docket number. She subsequently filed a corresponding motion seeking to have the circuit court declare section 5-62-106 unconstitutional, and it was also docketed with the criminal-docket number.

Nance also filed a pretrial motion to suppress evidence, asserting that the Lonoke County Sheriff's Office had seized approximately 140 dogs from her premises without a search warrant. Moreover, Nance asserted that none of the exceptions to the warrant requirement were applicable and, thus, any evidence related to the seizure should be suppressed. The circuit court denied the motion to suppress, and Nance was tried by a jury on March 12–14,

---

[2]The exact number of dogs seized is not evident from the record. Simpson testified at the suppression hearing that 127 adult dogs and 20 puppies were seized, but that number differs in various pleadings.

SLIP OPINION

2013. The jury found Nance guilty of five misdemeanor counts of cruelty to animals. After the jury was unable to agree on sentencing, the circuit court dismissed the jury and scheduled a hearing to take up the issue of sentencing. On March 29, 2013, the court held a sentencing hearing and sentenced Nance to 100 hours of community service at an animal shelter and payment of a $500 fine; both to be completed within sixty days from entry of the court's order. A written order reflecting the bench ruling was filed of record on June 6, 2013.

After the conclusion of the criminal proceedings, the circuit court held a hearing on April 29, 2013, to address the issue of the costs incurred by PCHS in caring for the dogs, as well as to address cross-motions by the State and by Nance regarding custody of the dogs, and Nance's motion to declare section 5-62-106 unconstitutional. At that hearing, Nance argued that the State's petition for custody of the dogs and costs for their care should be denied because she never received any written notice of the seizure of her dogs as required under section 5-62-106. She further argued that section 5-62-106 did not allow the seizure of her dogs, as it applied only to instances in which there is an animal in a vehicle with a person who is arrested or when animals are fighting. According to Nance, even if the statute is construed more broadly, there was still no basis for the seizure of all the dogs, because there was no testimony that any of the non-brachycephalic dogs had been seized pursuant to the statutory subchapter.

Nance also raised several arguments in support of her claim that section 5-62-106 was unconstitutional. She argued in relevant part that the statute was unconstitutional, both facially and as applied, because it did not comport with requirements of due process. She

further argued that she had never been given notice or an opportunity for a timely hearing and that the statute violated separation of powers because policies, procedures, and practices are solely within the purview of this court, not the legislature.

Thereafter, the circuit court entered a supplemental order denying Nance's motion to declare section 5-62-106 unconstitutional; ordering her to pay costs to PCHS of $6,425; divesting Nance of custody of the five dogs that she had been convicted of abusing; and ordering the return of the remaining dogs once Nance complied with the court's orders. Nance filed a timely notice of appeal; the State timely cross-appealed.

As her first point on appeal, Nance argues that the circuit court erred in denying her motion to suppress all evidence related to the seizure of the dogs because the search was made without a warrant and none of the exceptions to the warrant requirement applied. According to Nance, the State had the burden of proving that consent to the search was freely and voluntarily given and that there was no actual or implied duress or coercion. Nance further argues that the evidence demonstrated that, by the time she gave any consent to search, an illegal entry had already occurred and, thus, any consent that followed such an illegal intrusion was tainted and invalid.

The State counters that the circuit court properly determined that Nance freely consented to the search of her property. The State further asserts that Nance's argument that the search had already begun is not preserved for review because the circuit court never ruled on that issue; rather, it limited its decision solely to the issue of consent. The State is correct in both regards.

SLIP OPINION

When reviewing a circuit court's denial of a motion to suppress evidence, the appellate court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the trial court. *Pickering v. State*, 2012 Ark. 280, 412 S.W.3d 143. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.*

First, we address the State's contention that Nance's argument that any consent she may have given was invalid because it occurred after an illegal entry onto her property is not preserved for our review. In looking at the arguments raised at the suppression hearing and the circuit court's subsequent ruling, it is clear that the State is correct on the issue of preservation. As previously stated, Nance filed a motion to suppress evidence of the dogs that were seized or any documentary evidence related to those dogs on the basis that there had been an unlawful search conducted without a warrant that tainted the subsequent seizure of the dogs. The circuit court held a hearing on the suppression motion on February 27, 2013. Simpson, Dr. Medlock, and Nance testified at the hearing.

Simpson testified about the calls she had received regarding the dogs on Nance's property and explained that she went there with the others to check on the dogs and to see if PCHS could offer any assistance. On the way to Austin, Simpson contacted the Lonoke

7

County Sheriff's Office, and Sergeant Sanderson was dispatched to assist. Simpson testified that she then contacted Nance and told her she was there with a Lonoke County deputy and would like to talk to her about suggestions on caring for the dogs in the hot weather. Nance replied that she was at work and would be there in thirty to forty-five minutes. According to Simpson, when Nance arrived, Simpson introduced herself and told her that PCHS had received some calls about the dogs. She asked Nance if she would walk the group through the kennel so that they could make suggestions on how to improve conditions. According to Simpson, Nance agreed to walk the group through the kennel. Simpson denied that Nance ever asked the group to leave. Moreover, Simpson repeatedly denied that anyone walked through the kennel prior to Nance's arriving and escorting them.

Dr. Medlock also testified that she was one of the people who went to the Nance property, and stated that she was worried about the excessive heat and some of the breeds of the dogs because they were considered brachycephalic, or "schmuch-nosed dogs," who cannot ventilate as well as dogs with longer airways. According to Dr. Medlock, she heard Simpson ask Nance for permission to walk through the kennel and heard Nance agree. She stated that Nance led the group through the kennel. Dr. Medlock stated that it was their usual practice to wait for law enforcement before entering someone's property. She confirmed that her report reflected that while they waited, the group could see a large number of dogs in what appeared to be a run-down facility, with much trash and debris littering the property. Dr. Medlock also stated that it was possible to see a lot of the kennel from the road. Dr. Medlock denied that a decision to seize the dogs had been made prior to Nance's arrival.

SLIP OPINION

Nance was the final witness at the suppression hearing. She testified that she received a call from Simpson who stated that she was at Nance's and did not want to take her dogs but wanted to give her some suggestions. According to Nance, when she arrived, Simpson and Dr. Medlock were standing on the gravel beside the kennel gates. Nance stated that Simpson introduced herself and stated that they were going to have to take the dogs because it was too hot. Nance denied that Simpson asked for permission to search the property. She stated that she tried to talk Simpson out of taking the dogs, explaining that they were acclimated to the temperatures and were checked on regularly throughout the day. Nance again stated that she did not give them permission to search the property, but then conceded that she led them through and around the property to try and convince them not to take the dogs. Nance further stated that, by the time she arrived, she did not feel as if there was anything she could do to stop them from taking the dogs. On cross-examination, Nance stated that she asked Simpson if she had a search warrant but denied that she asked them to leave her property.

At the conclusion of the hearing, Nance argued that the State's theory that she had consented to the search was invalid because she could not have given legal consent when the search had already begun. Nance further argued that it was clear that the group had already made a decision to seize the dogs before she consented to the walk-through. Moreover, Nance argued that there was no voluntary consent given because the presence of a uniformed officer resulted in "coerci[on] or duress, either actual or implied."

The court took the matter under advisement and entered a written order denying the motion to suppress on March 7, 2013. In its order, the circuit court ruled that the State had

SLIP OPINION

proved by clear and positive evidence that, pursuant to Arkansas Rule of Criminal Procedure 11.1, Nance consented to the search and that such consent was freely and voluntarily given and that there was no actual or implied coercion or duress. The court then concluded that there was no violation of Nance's rights under the Fourth Amendment to the United States Constitution.

Although Nance argued at the suppression hearing that an illegal search had begun before she ever gave any consent, it is clear that the circuit court did not rule on this argument. Instead, the circuit court focused solely on the issue of Nance's voluntary consent to search. This court addressed the issue of preservation where a party files a motion on multiple grounds and explained as follows:

> In *Eastin v. State*, 370 Ark. 10, 16, 257 S.W.3d 58, 63 (2007), this court discussed when multiple arguments are presented by a motion:
>
>> It is the appellant's burden to present a case before the trial court that fully and completely develops all the issues. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Walker v. State*, 314 Ark. 628, 864 S.W.2d 230 (1993). Moreover, it is the appellant's burden to obtain a clear ruling on an issue from the trial court. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 519 U.S. 898 (1996); *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226 (1996). In both *Misskelley* and *Bowen*, the appellants raised multiple arguments in their motions to suppress. This court refused to reach the merits of those arguments that were not specifically ruled upon by the trial court in denying the motions.

*Rounsaville v. State*, 372 Ark. 252, 258–59, 273 S.W.3d 486, 491–92 (2008). Thus, our court has made it clear that Nance had the burden of obtaining a ruling on her alternative argument that a search was already underway at the time she gave consent. Her failure to do so precludes this court from addressing that issue.

10

We turn now to the issue of consent, which is preserved for our review. Arkansas Rule of Criminal Procedure 11.1 (2013) provides that "[a]n officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search or seizure." Additionally, a consensual search shall not exceed, in duration or scope, the limits of the consent given. Ark. R. Crim. P. 11.3 (2013). The State has the burden of proving by clear and convincing evidence that consent to search was freely and voluntarily given and that there was no actual or implied duress or coercion. Ark. R. Crim. P. 11.1(b). The United States Supreme Court has held that the test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973)); *see also Welch v. State*, 364 Ark. 324, 219 S.W.3d 156 (2005). This court has stated that knowledge of the right to refuse consent to search is not a requirement to prove the voluntariness of consent. *Webb v. State*, 2011 Ark. 430, 385 S.W.3d 152; *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002).

Here, the testimony on the suppression issue can readily be summed up by stating that Simpson and Dr. Medlock both testified that Nance gave her consent for the group to walk through her property and look at the kennel. Nance was the only witness who testified to anything contrary, and even then, she conceded that she agreed to allow them to walk through her property, although she asserted that she felt as if she had no choice.

Now, on appeal, Nance continues to argue the evidence in a way to support her contention that her consent was not voluntary. She relies on this court's decision in *State v.*

11

*Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004), and asserts that "the sensitivity of the *Brown* court to, and acknowledgment of, the coercive nature of the presence of law enforcement on the issue of consent applies equally here." Nance's argument is wholly misplaced, as *Brown* is clearly distinguishable. *Brown* involved three armed officers requesting and receiving consent to search a home without advising a homeowner of his right to refuse consent that resulted in a violation of the homeowner's constitutional rights. As stated previously, the issue of knowledge of the right to refuse consent does not affect the voluntariness of Nance's consent.

In sum, after hearing the witnesses and their conflicting testimony, the circuit court ruled that Nance had freely given her consent to search. Thus, it is clear that the circuit court found that the testimony of Simpson and Dr. Medlock was more credible than the testimony of Nance, an interested party. As we stated in *State v. Nichols*, 364 Ark. 1, 216 S.W.3d 114 (2005), this court has never wavered from its long-standing rule that it is the province of the circuit court, not this court, to determine the credibility of witnesses. Moreover, the record is devoid of any evidence that appellant was coerced into consenting. Accordingly, we cannot say that the circuit court clearly erred in denying Nance's motion to suppress.[3]

---

[3]In her argument to this court, Nance makes much ado about the kennel being part of the curtilage and about where Simpson and the others were located on the property when she arrived; however, none of those issues are relevant to the question of consent; rather, they go to Nance's argument that a search had already begun by the time she arrived. Moreover, the circuit court made no findings that the kennel was part of the curtilage or which part of the property Simpson and the others were on when Nance arrived. Thus, there is no need for this court to consider such issues.

SLIP OPINION

The remaining points raised by Nance on appeal and by the State on cross–appeal are all challenges to the circuit court's supplemental order regarding the costs owed by Nance for the care of the dogs and the custody of those dogs. This supplemental order was the result of the motions filed by Nance and the State pursuant to section 5-62-106, as well as motions challenging the constitutionality of that statute. Although not raised by any party, this court must determine as a threshold matter whether the circuit court had subject–matter jurisdiction to consider and rule on those motions. The question of subject–matter jurisdiction is always open for review, cannot be waived, can be questioned for the first time on appeal, and can even be raised by the appellate court. *Terry v. Lock*, 343 Ark. 452, 37 S.W.3d 202 (2001). If the circuit court lacked jurisdiction, this court also lacks jurisdiction.

Section 5-62-106 governs the disposition of animals seized pursuant to the statutory chapter outlining offenses involving animals, including charges of animal cruelty and aggravated animal cruelty. This section provides in relevant part:

> (a)(1) Unless otherwise ordered by a court, for purposes of this subchapter, an animal that has been seized by a law enforcement officer or animal control officer under this subchapter shall remain at the appropriate place of custody for a period of at least fifteen (15) consecutive days, including weekends and holidays, after written notice is received by the owner.

> . . . .

> (4)(A) After written notice is received by the owner or published under subdivision (a)(3) of this section, the owner within fifteen (15) business days may petition the district court having jurisdiction where the animal was seized to determine the custody of the animal.

> (B) If a petition is not filed by the owner within the time period prescribed by this section, the prosecuting attorney shall file a petition in the district court to divest

the owner of ownership of the animal and, after a hearing, the district court may order the animal transferred to an appropriate place of custody, euthanized, or any other disposition the district court deems appropriate.

Ark. Code Ann. § 5-62-106(a)(1), (a)(4)(A)–(B).

Pursuant to the plain language of section 5-62-106, an owner may petition "the district court having jurisdiction where the animal was seized" to determine custody of the animal; or, if no petition is filed by the owner, the prosecuting attorney "shall file a petition in the district court to divest the owner of the ownership of the animal." Ark. Code Ann. § 5-62-106(a)(4)(A), (B). In this case, the State and Nance filed their respective petitions in the circuit court pursuant to this statute. The State filed its motion for divestment of custody in the circuit court criminal action on November 13, 2012, asking that custody of the dogs seized be divested from Nance. On December 6, 2012, Nance filed a response to the State's motion and a motion to have the dogs returned to her, arguing, in relevant part, that the dogs were seized in violation of her constitutional rights and that the statutory scheme under which the dogs were taken was unconstitutional on its face and as applied. Nance filed a second petition to determine custody of the seized dogs on December 12, 2012, and contemporaneously with this petition, filed a motion to declare section 5-62-106 unconstitutional. Therein, she specifically alleged that the statute was unconstitutional as applied to her. On January 23, 2013, she filed a supplemental motion to declare the statute unconstitutional, further asserting that the section is facially unconstitutional.

It appears from the record, specifically in the respective motions filed by the State and by Nance, that Nance originally filed a petition in the Lonoke County District Court,

pursuant to section 5-62-106, requesting the return of her dogs. According to Nance and the State, the district court held a hearing and ultimately ruled that the legislature lacked the authority in section 5-62-106 to establish jurisdiction in the district court. However, there is no official record of what transpired in district court. One of Nance's pleadings states that the district court order is attached as an exhibit, but no such exhibit is included in the record. Thus, while it appears that Nance tried to originally avail herself of the proper procedure set forth in section 5-62-106, once the district court dismissed her petition for lack of jurisdiction, the proper method for bringing the matter in circuit court would have been to file an appeal of the district court's order of dismissal in the circuit court, as required by District Court Rule 9 (2013), but this was not done. Simply refiling the petitions in the pending criminal case in circuit court did not somehow confer jurisdiction on the circuit court to consider petitions and arguments related to section 5-62-106.

This court addressed the issue of subject-matter jurisdiction in *Hunter v. Runyan*, 2011 Ark. 43, 382 S.W.3d 643, explaining in relevant part as follows:

> It is well settled that, in Arkansas, subject-matter jurisdiction is considered to be a court's authority to hear and decide a particular type of case. *Edwards v. Edwards*, 2009 Ark. 580, 357 S.W.3d 445 (citing David Newbern & John Watkins, *Civil Practice and Procedure* § 2:1, at 19–20 (4th ed. 2006)). An Arkansas court lacks subject-matter jurisdiction if it cannot hear a matter "under any circumstances" and is "wholly incompetent to grant the relief sought." *Id*. at 4, 357 S.W.3d at 448 (quoting *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 352–53, 836 S.W.2d 853, 858 (1992)). An Arkansas circuit court obtains subject-matter jurisdiction when it is conferred under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules. *Id*.

*Id.* at 10–11, 382 S.W.3d at 649–50. Here, subject-matter jurisdiction was conferred by section 5-62-106, and it was conferred in the district court. This jurisdiction would include any authority over the petitions for custody and the related arguments regarding the constitutionality of the statutory scheme.[4] In fact, this court has held that any assertion of a constitutional violation under the Arkansas Constitution and the United States Constitution presupposes that the party is properly within the court's jurisdiction. *See Roberson v. State*, 2010 Ark. 433; *Lineberry v. State*, 322 Ark. 84, 907 S.W.2d 705 (1995).

In sum, the petitions for divestment by the State and the petition for custody by Nance filed in the circuit court were in direct contravention of the statutory provision requiring that such petitions be filed in district court. In the absence of any appeal of the district court's purported order of dismissal to the circuit court, the circuit court lacked jurisdiction to decide the petitions regarding ownership of the dogs or the costs owed for their care. Likewise, because Nance's challenge to the constitutionality of the statute was so intertwined with the petitions requesting a determination of custody under section 5-62-106, the circuit court also lacked jurisdiction to rule that the statute was constitutional. Thus, because the circuit court

---

[4]Normally, a party could seek a declaration of a statute's constitutionality by filing a declaratory-judgment action with the circuit court. This court has recognized that declaratory judgments are used to determine the rights and liabilities of respective parties. *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762. The purpose of the declaratory-judgment statutory scheme "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Ark. Code Ann. § 16-111-102(b) (Repl. 2006). Here, however, Nance did not file such an action. She filed a response to the State's petition for divestment of custody, her own motions for return of custody, and in the context of advancing those petitions, she alleged that section 5-62-106 was unconstitutional.

lacked jurisdiction over the petitions filed pursuant to section 5-62-106 and the issue of the constitutionality of that statute, we likewise lack jurisdiction to review the circuit court's supplemental order.[5] In so holding, we are cognizant that one of Nance's arguments challenging the constitutionality of section 5-62-106 is that the General Assembly violated the doctrine of separation of powers in placing jurisdiction in district court where Rule 15.2 of the Arkansas Rules of Criminal Procedure provides for circuit court jurisdiction in matters involving seized property. We do not pass judgment on that issue at this juncture, as we lack jurisdiction to consider the argument.

Affirmed in part and dismissed in part; cross-appeal dismissed.

BAKER and HART, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** Inexplicably, the majority in this case holds that the legislature has divested the circuit court of jurisdiction to hear and decide an action, filed by the state, seeking to permanently remove from its owner property seized in connection to a felony prosecution. The majority contends that the legislature did so by the passage of Arkansas Code Annotated section 5-62-106 (Supp. 2013). I cannot agree that the legislature had either the intent or the authority to strip the circuit court of jurisdiction conferred on it by the Arkansas Constitution. Thus, I dissent.

---

[5]While the dissent would reach, and goes on to decide, numerous issues outlined therein, not one of those issues was properly raised, argued, or developed below or on appeal. This court should not and does not make an appellant's argument for her or him.



The majority holds that the circuit court was without subject-matter jurisdiction based on the language of Arkansas Code Annotated section 5-62-106(a)(4)(A), which states:

> After written notice is received by the owner or published under subdivision (a)(3) of this section, the owner within fifteen (15) business days may petition the district court having jurisdiction where the animal was seized to determine the custody of the animal.

The majority holds that this statute creates subject-matter jurisdiction over the disposition of animals solely in the district courts. This is incorrect.

Amendment 80 to the Arkansas Constitution states that circuit courts "are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution." Amendment 80 also gives the General Assembly "the power to establish jurisdiction of all courts and venue of all actions therein, unless otherwise provided in this constitution." While the General Assembly has the power to establish jurisdiction over the disposition of animals in the district court, it does not have the power to rescind that jurisdiction from the circuit court, as the constitution grants jurisdiction over all justiciable matters not outlined in the constitution to circuit courts. Therefore, while an owner or the prosecuting attorney may file an action in the district court, the owner or the prosecuting attorney is not barred from filing that action in the circuit court.

The majority intertwines its conclusion that the circuit court lacked subject-matter jurisdiction with its observation that the parties should have appealed from the district court's ruling in order to establish jurisdiction in the circuit court. While the parties' pleadings in the criminal case assert that a petition was filed by Nance in district court, that the State objected

asserting that the circuit court was the proper venue of the proceedings, and that the district court ruled that the legislature lacked the authority to establish district-court jurisdiction, we do not in the record before us have the pleadings filed in the district court or the district court's order. Given that we do not have that case before us and do not have these documents, the majority's conclusion that the district court's order should have been appealed to the circuit court is without a solid foundation and is based on speculation.

Even were the majority's holding not based on speculation, the majority errs. The majority cites *Roberson v. State*, 2010 Ark. 433, and *Lineberry v. State*, 322 Ark. 84, 907 S.W.2d 705 (1995), for the assertion that the circuit court had no jurisdiction when Nance did not appeal the decision of the district court to the circuit court. These cases are distinguishable, however, because in both the district court ruled on the merits of the case. Here, even if the majority's speculation that the district court dismissed the case for lack of jurisdiction is true, there was no ruling on the merits. A finding that a court lacks subject-matter jurisdiction cannot be an adjudication on the merits. *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envtl. Servs., Inc.*, 2011 Ark. 501, 385 S.W.3d 797. Moreover, the circuit court assumed jurisdiction first when charges were filed in that court. *Doss v. Taylor*, 244 Ark. 252, 424 S.W.2d 541 (1968).

Further, the majority's holding divests the circuit court of subject-matter jurisdiction over items seized by law enforcement. Even if this was the result intended by the General Assembly in passing Arkansas Code Annotated section 5-62-106, the circuit court retains

19

SLIP OPINION

jurisdiction over the disposition of seized property. Arkansas Code Annotated section 16-11-301 (Repl. 2010) states:

> All statutes concerning pleading, practice, and procedure in all courts shall be deemed superseded by rules adopted by the Supreme Court pursuant to Arkansas Constitution, Amendment 80, §3, or pursuant to the Supreme Court's constitutional, inherent, or statutory authority prior to the effective date of Arkansas Constitution, Amendment 80.

Arkansas Rule of Criminal Procedure 15.2(a) (2013) grants the circuit court the jurisdiction to dispose of seized evidence in a criminal trial. It states:

> Within thirty (30) days after notice of seizure, or at such a later date as the court in its discretion may allow:
>
> (i) the individual from whose person, property, or premises things have been seized may move the court to whom the warrant was returned, or the court having jurisdiction over the offense in question, as the case may be, to return things seized to the person or premises from which they were seized.

The circuit court clearly had jurisdiction over the offense in question. Our court rule supercedes the statute granting jurisdiction to the district court as it concerns "practice, pleading or procedure." Accordingly, the circuit court, under our rules, had jurisdiction to hear a motion on the return of the dogs to the person or premises from which they were seized pursuant to the offense in question.

In *Hunter v. Runyan*, 2011 Ark. 43, 382 S.W.3d 643, this court stated that an Arkansas circuit court obtains subject-matter jurisdiction when it is conferred under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules. In this case, jurisdiction was conferred on the circuit court by both the Arkansas Constitution and our court rules. Therefore, the majority errs in holding that the circuit court does not have

20

jurisdiction to hear Nance's petitions to determine custody of her dogs and the constitutional issues intertwined therein. Because the circuit court had jurisdiction, this court has jurisdiction to hear the appeal.

Finally, after reading the majority's decision, I am unable to decipher what is to be done with the dogs now in the possession of the Pulaski County Humane Society for years at a tremendous expense.[1] Because this court does not address the issue, and merely dismisses the appeal, the fate of these dogs is left in limbo. Nance cannot file a new action in the district court, as it has allegedly already found that it lacked jurisdiction over the matter. Further, Nance cannot simply pay the fine and regain possession of the dogs as set forth in the circuit court's order, as the majority holds that the circuit court did not have jurisdiction. A court that acts without subject–matter jurisdiction or in excess of its jurisdiction produces a result that is void and cannot be enforced. *Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998). Nance is therefore left without recourse.

We should reach the merits and decide this case.

HART, J., joins.

---

[1]Nance was charged with three counts of aggravated cruelty to animals and ten misdemeanor counts of cruelty to animals. She was acquitted of all but five misdemeanor counts, relating only to five dogs who were brachycephalic dogs. However, the State seized approximately 140 dogs and is still in possession of them.Nance was charged with three counts of aggravated cruelty to animals and ten misdemeanor counts of cruelty to animals. She was acquitted of all but five misdemeanor counts, relating only to five dogs who were brachycephalic dogs. However, the State seized approximately 140 dogs and is still in possession of them.

Cite as 2014 Ark. 201

*Wright, Lindsey & Jennings, LLP*, by: *Jerry J. Sallings*, *Michael A. Thompson*, and *Seth R. Jewell*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.