Cite as 2025 Ark. 11

# SUPREME COURT OF ARKANSAS

**No.** CR–24–375

| | | |
|---|---|---|
| EATHAN CYPERT | | **Opinion Delivered:** February 27, 2025 |
| | APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-22-658] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MICHAEL J. MEDLOCK, JUDGE |
| | APPELLEE | AFFIRMED. |

**NICHOLAS J. BRONNI, Associate Justice**

Eathan Cypert was convicted of first-degree murder and sentenced to life imprisonment plus 15 years for killing his wife, Kristina. He asks us to reverse his conviction based on a juror misconduct claim and the trial court's refusal to give a second-degree murder instruction. We affirm.

## Facts and Procedural Background

Around 2 a.m. on July 2, 2022, Eathan Cypert shot his wife in the back with an AR-15. Hours earlier, the couple had been drinking and smoking with Patricia—Cypert's aunt who was staying at the couple's home—and spending time with Kristina's young nieces who lived next door. Kristina's nieces left Cypert's home before the shooting and went to bed; they were awakened by screaming, gunshots, and the sound of Cypert's car starting up and leaving. Police later discovered from Patricia's frantic 911 call that Cypert and Kristina had gotten into an argument, Kristina had tried to leave, and Patricia had heard several gunshots after Cypert chased his wife outside with his "big gun."

At the scene, investigators found a trail of blood leading from the front to the east side of the house where Kristina lay dead. They recovered, among other items, six fresh bullet casings on the front porch. Tracing those six shots, investigators found two holes in the front porch's interior wall, showing that two of Cypert's shots had entered the front porch wall and exited out the east side wall. An autopsy later revealed that Kristina had died from two bullet wounds—one in the middle of her back and the other in her buttocks. At trial, the medical examiner testified that neither of those wounds indicated that the bullets striking Kristina had ricocheted, had an unusual trajectory, or were the result of a discharge gone wrong. And the on-scene medical investigator testified that there was no evidence that anyone had attempted to stop the bleeding or otherwise save Kristina.

Later that night, officers apprehended Cypert and brought him in for questioning. His demeanor was cold, and his answers were evasive. He claimed that he had just left a casino in Roland, Oklahoma, but casino staff confirmed that Cypert's player's card had not been used that night and that he did not appear on the casino's security footage. Cypert had also left his wallet, money, identification, and phone at home. When told that his wife had been shot, Cypert responded, "[t]hat's news to me," and never asked if she was alive. Instead, he repeatedly claimed not to know anything about the shooting. Cypert's clothing, however, tested positive for gunshot residue.

Cypert was subsequently arrested and charged with first-degree murder. Prosecutors later added a firearm enhancement. Before trial, Cypert's counsel filed several unsuccessful motions. Most notably, over objections, the trial court allowed Kristina's family and friends to testify that she had suffered significant bruising, including a black eye, during her

relationship with Cypert. They also testified about Cypert getting angry, threatening others, and shooting a tree stump in the back of his house with his AR-15.

At the end of trial, Cypert proffered a second-degree murder instruction that the trial court rejected. The jury subsequently found Cypert guilty of first-degree murder with a firearm enhancement and sentenced him to life imprisonment plus 15 years. The circuit court entered the judgment and sentence on January 29, 2024.

Soon after the verdict, a juror informed Cypert's counsel that during deliberations another juror had shared insider details of Cypert's plea negotiations and had drawn a diagram of Cypert's home to aid the other jurors. During voir dire, the juror who had drawn the diagram and shared inside knowledge of the plea negotiations had stated that, although he had gone to high school with Kristina's mother and seen news about the case, he knew nothing further about the case and could be impartial.[1] Based on that new information, on January 31, 2024, Cypert filed a motion for a new trial.

On February 12, 2024, before the post-trial motion was adjudicated, Cypert filed a notice of appeal challenging the jury's verdict. The next week, the circuit court held a hearing on Cypert's juror misconduct claims; it prohibited testimony and heard only legal arguments. On February 27, 2024, the circuit court denied Cypert's post-trial motion. Cypert never amended the notice of appeal to challenge this denial. Nor did he ask to include the voir dire or post-trial hearing transcript in the appellate record.[2]

---

[1] At oral argument, Cypert's counsel confirmed the juror's identity.

[2] The relevant portion of the voir dire transcript is included in the record through the State's response to the motion for a new trial. The post-trial hearing transcript is in our supplemental record.

3

**Discussion**

Cypert seeks a new trial on the grounds that the trial court erroneously (1) denied his post-trial motion for a new trial based on juror misconduct and (2) refused to instruct the jury on second-degree murder. We reject both claims. First, we conclude that we lack jurisdiction to review the denial of Cypert's post-trial motion for a new trial based on juror misconduct because he failed to amend his notice of appeal to cover that order. Second, we conclude that Cypert was not entitled to a second-degree murder instruction because the record does not support that instruction.

Juror Misconduct Claim

We begin with Cypert's juror misconduct claim. To consider the merits of that claim, we must first ensure that we have jurisdiction to review it. *See Nance v. State*, 2014 Ark. 201, at 16, 433 S.W.3d 872, 881 (explaining that without subject matter jurisdiction we can neither hear nor decide a case); *LaRue v. LaRue*, 268 Ark. 86, 88, 593 S.W.2d 185, 187 (1980) ("[I]t is not only the power, but the duty of a court to determine whether it has jurisdiction."). Conducting that review, we conclude that Cypert's failure to file an amended notice of appeal after the circuit court denied his motion for a new trial means we lack jurisdiction to review his juror misconduct claim.

A. For this court to exercise jurisdiction, a party must have timely filed a notice of appeal. *See Wright v. State*, 359 Ark. 418, 423, 198 S.W.3d 537, 541 (2004) ("the timely filing of a notice of appeal is, and always has been, jurisdictional"). In criminal cases, Arkansas Rule of Appellate Procedure—Criminal 2 governs notices of appeal. The first part of that provision, Rule 2(a), requires an appealing party to file a notice of appeal "within

4

thirty (30) days from . . . the date of entry of a judgment or uniform sentencing order." Rule 2(b)(2) then provides that where, like here, "[a] notice of appeal [is] filed" within that period but "before disposition of any post-trial motions," the notice of appeal is treated as if it were filed "on the day after the entry of an order disposing of the last motion outstanding."

Reading that language in isolation, it would be tempting to believe that a notice of appeal filed before the disposition of any post-trial motion would cover both the underlying judgment and sentence *and* any later-decided post-trial motion. But that is not the case. Instead, Rule 2(b)(2) adds that when a notice of appeal is filed before the resolution of any post-trial motion, the original notice only "appeal[s] the underlying judgment." To obtain review of a later-resolved post-trial motion, an appealing party must "amend the previously filed notice" within thirty days of that subsequent decision. And Rule 2(e) allows a party who misses that deadline to file a motion for belated appeal within 18 months.

Cypert did not comply with Rule 2(b)(2)'s amendment requirement. Cypert was sentenced on January 29, 2024, and he filed his notice of appeal on February 12, 2024. At that point, the circuit court had not yet decided Cypert's motion for a new trial based on juror misconduct. When the circuit court denied that motion on February 27, 2024, Cypert's notice of appeal became "effective to appeal the underlying judgment," and he had 30 days to "amend [his] previously filed notice" to cover the denial of his post-trial motion. Cypert never did so. Nor has he pursued a belated appeal under Rule 2(e). Accordingly, no notice of appeal covers the denial of his motion for a new trial based on juror misconduct, and we lack jurisdiction to review the juror misconduct claim raised for the first time in that

5

motion. *See Echols v. State*, 2016 Ark. 225, at 3, 492 S.W.3d 846, 851 (holding that absent an amendment to the notice of appeal this Court lacks jurisdiction to review a post-trial motion).

B.  In response, Cypert argues that our jurisdiction is not so limited.  He claims instead that Arkansas Code Annotated section 16-91-113 requires this Court to review his juror misconduct claim and that, even if that is not the case, our case law requires such a review.  Both arguments fall short.

First, section 16-91-113 does not grant us the authority to review—let alone mandate that we review—orders that have not been timely appealed.  Far from providing jurisdiction, that provision governs issue presentation and preservation in cases where a notice of appeal has been timely filed.

Start with the first half of that provision, subsection 113(a).  That subsection codifies the well-established party-presentation principle, providing that, "[t]he Supreme Court need only review those matters briefed and argued by the appellant."  Ark. Code Ann. § 16-91-113(a); *see also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system . . . we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").  Subsection 113(a) then says that limitation does not apply "where either a sentence for life imprisonment or death has been imposed," and in that small subset of cases, this Court "shall review all errors prejudicial to the rights of the appellant."  And to carry out that mandate, our own rules require both the State and appellant to identify all

6

adverse rulings that the appellant has opted not to develop in briefing.  *See* Ark. Sup. Ct. R. 4-3(a).

Thus, on its face, subsection 113(a) merely codifies the party-presentation principle and carves out a narrow exception for cases involving death or life imprisonment.  It says nothing about jurisdiction, and it does not purport to grant us jurisdiction to review claims that have not otherwise been timely appealed pursuant to Arkansas Rule of Appellate Procedure—Criminal 2.  Indeed, a contrary reading would be nonsensical, requiring us to "review all errors to the rights of the appellant" even in cases where there has been no appeal at all.  And even Cypert does not go that far, suggesting instead at oral argument that obligation only applies where at least an original notice of appeal has been filed.  Yet he does not point to any language in subsection 113(a) that would support such a distinction, and as explained above, that reading is not consistent with Rule 2(b)(2)'s specific provisions governing post-trial motions resolved after an initial notice of appeal has been filed.

Nor does the second half of the statute, subsection 113(b), provide us with jurisdiction.  That provision is about issue preservation.  It says that a party need not "file a motion for new trial to obtain review of any matter on appeal" and that, if a party does file a new trial motion, "on appeal the appellant shall not be restricted to a consideration of matters assigned therein."  Ark. Code Ann. 16-91-113(b).  In other words, it places parties in the same position as they would have been without filing a new trial motion, allowing them to raise any properly preserved issues not argued in a new trial motion on appeal.  As applied here, that means Cypert did not waive his jury-instruction challenge by failing to relitigate it in his new trial motion, allowing us to review the merits of that argument below.

But it does not give us jurisdiction to review an order denying claims, like Cypert's juror misconduct claim, raised for the first time in a new trial motion. Instead, as explained above, to obtain review of that claim, Cypert had to comply with Arkansas Rule of Appellate Procedure—Criminal 2.

Second, abandoning statutory text altogether, Cypert argues that we should sidestep our normal jurisdictional requirements because of the extraordinary nature of his claim. Indeed, as Cypert frames it, the juror misconduct that he alleges was so egregious that it effectively deprived him of a trial. To support that argument, he cites two criminal cases where we respectively set aside our jurisdiction and preservation requirements because the defendants in those cases were completely deprived of their trial rights. *See Ayala v. State*, 365 Ark. 192, 194–95, 226 S.W.3d 766, 768 (2006) (setting aside the amended notice of appeal requirement when the circuit court denied the defendant a trial for missing a pre-trial conference); *Winkle v. State*, 310 Ark. 713, 717–18, 847 S.W.2d 589, 591–92 (1992) (setting aside the contemporaneous objection requirement because a defendant does not need a contemporaneous objection to preserve his constitutional right to a trial).

That argument misses the mark. To be sure, the juror misconduct that Cypert alleges (and the State apparently does not dispute) is troubling. In particular, Cypert's allegation that a juror shared inside knowledge of plea negotiations contravenes the well-established principle that plea negotiations are "not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer." Ark R. Evid. 410; *see United States v. Robertson*, 582 F.2d 1356, 1366-67 (5th Cir. 1978) (en banc) (explaining that the federal analog is intended to promote candid plea negotiations and absent inadmissibility

8

that goal would not be possible).  Moreover, it is unclear why the circuit court refused to entertain any evidence of misconduct given that plea negotiation information constitutes extraneous information that would be an exception to our general rule excluding juror deliberation testimony.  Ark. R. Evid. 606(b)(2)(A).

That being said, Cypert was not completely deprived of his right to a trial, and his claim is not on par with the two extreme cases that he cites.  Quite the opposite.  Unlike the defendants in those cases who were *entirely* deprived of a jury trial, Cypert had a full trial in front of a jury—albeit one that he claims was tainted by misconduct.  And we have not extended the rare exception articulated in those two admittedly outlier cases to cover claims, like Cypert's, that he was constructively denied a right to a fair trial.  *See Chunestudy v. State*, 2012 Ark. 222, at 10, 408 S.W.3d 55, 62–63 (2012) (declining to extend *Ayala* and treating it as a rare exception).

Nor has Cypert provided a compelling reason to do so here.  Far from it.  To obtain review here, Cypert could have invoked Arkansas Rule of Appellate Procedure—2(e) and attempted to show good cause for a belated appeal.  That alternative mechanism for curing Cypert's jurisdictional defect alone would bar us from crafting a different remedy here.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 28–29 (2001) (explicit exceptions to a general prohibition implicitly exclude alternative exceptions).

We therefore decline Cypert's invitation to expand our jurisdiction and hold that we lack jurisdiction to review his juror misconduct claim.

<u>Second-Degree Murder Instruction Claim</u>

Cypert also challenges the circuit court's decision declining to give a second-degree murder instruction. As previously noted, we have jurisdiction to review this claim because it was raised at trial and is covered by his notice of appeal. *See supra* at 7. We review such properly preserved jury-instruction challenges for an abuse of discretion. *See Pokatilov v. State*, 2017 Ark. 264, at 7, 526 S.W.3d 849, 855. Applying that standard, we reject Cypert's claim.

We have previously explained that to obtain instruction on a lesser included offense, a proponent must demonstrate that "the slightest evidence supports" that instruction. *Goehler v. State*, 2023 Ark. 186, at 10, 678 S.W.3d 745, 752. That might sound like a low bar, but our cases have shown that it is not. *See id.* at 12, 678 S.W.3d at 753 (approving denial of second-degree murder instruction as a lesser included offense); *Marshall v. State*, 2021 Ark. 158, at 7–8, 627 S.W.3d 810, 814 (same); *Dixon v. State*, 2019 Ark. 245, at 6, 581 S.W.3d 505, 509 (same); *Hardman v. State*, 356 Ark. 7, 15, 144 S.W.3d 744, 748 (2004) (same); *Atkinson v. State*, 347 Ark. 336, 349, 64 S.W.3d 259, 268 (2002) (same); *Britt v. State*, 344 Ark. 13, 23, 38 S.W.3d 363, 370 (2001) (same). Rather, it requires the proponent of an instruction to demonstrate an actual "basis for acquitting the defendant of the charged crime and instead convicting him of the lesser." *Goehler*, 2023 Ark. 186, at 10, 678 S.W.3d at 752.

Here, Cypert sought a second-degree murder instruction. The difference between first-degree and second-degree murder is the state of mind necessary to commit each crime. While first-degree murder requires that the defendant "acted for the *purpose* of causing the

death of another person," second-degree murder only requires that the defendant "*knowingly* cause[d] the death of another person under circumstances *manifesting extreme indifference to the value of human life*." *Compare* Ark. Code Ann. § 5-10-102; *with* Ark. Code Ann. § 5-10-103 (emphasis added). So to receive a second-degree murder instruction, the defendant must "point to evidence in the record that supports a finding that he acted with a 'knowing' mental state rather than a 'purposeful' mental state." *Britt*, 344 Ark. at 23, 38 S.W.3d at 370.

Applying that rule, we have held that a defendant is not entitled to a second-degree murder instruction where all the evidence supports the conclusion that the defendant acted solely with the purpose of killing the victim. *See Goehler*, 2023 Ark. 186, at 10, 678 S.W.3d at 753 (second-degree murder instruction not required where all the evidence supported the defendant's ultimate plan to kill even though the first shot did not kill the victim and the killing was not at point blank range); *Britt*, 344 Ark. at 23, 38 S.W.3d at 370 (second-degree murder instruction not required where all the evidence pointed to a "purposeful, execution-style killing"). By contrast, we have concluded that a second-degree murder instruction is warranted where affirmative evidence provides a basis for believing the defendant—despite knowing his conduct was likely to cause death—did not intend to kill the victim. *See Wyles v. State*, 357 Ark. 530, 537, 182 S.W.3d 142, 147 (2004) (second-degree murder instruction should have been given when the murder resulted from a husband choking his wife until she died after an escalating physical altercation where she threatened to kill him); *Morris v. State*, 351 Ark. 426, 430–31, 94 S.W.3d 913, 916 (2003) (failure to give a second-degree murder instruction was error when the defendant shot into

the victim's car without aiming and intending to fire at another occupant who he believed had a gun).

Under that standard, Cypert was not entitled to a second-degree murder instruction because all the evidence supported the conclusion that he purposefully shot and intended to kill Kristina. Cypert did not merely know that his shooting was practically certain to result in Kristina's death. Instead, like the defendant in *Goehler*, his actions reflect purpose and a plan to kill. He followed Kristina out of the house after an argument; he pulled the trigger of a high-velocity rifle six separate times; and even if some of those shots hit a wall, others undisputedly did not. Indeed, two non-lethal shots through the wall do not negate the four previous shots or, on the entirety of the record here, suggest that Cypert did not intend to kill Kristina. And the medical examiner's uncontradicted testimony that the fatal shots were not the result of an atypical trajectory, a warning shot gone wrong, or a misfire demonstrates as much.

Moreover, Cypert's actions after the shooting likewise contradict any assertion that Cypert's objective was anything other than death. *See State v. Miller*, 638 S.W.3d 136, 159 (Tenn. 2021) (intent to kill can be inferred from a defendant's failure to render aid to a victim after shooting); *State v. Veillon*, 297 So. 3d 1091, 1102 (La. App. 2020) (same). Cypert never attempted to render aid to Kristina; he left the scene and disposed of the murder weapon. Far from demonstrating the kind of remorse that would be expected if he had not intended to kill Kristina, when confronted by police, Cypert never asked about his wife's condition and proceeded to lie about his whereabouts. Thus, on this record, no basis existed for acquitting Cypert on the first-degree murder charge and convicting him of

second-degree murder, and the circuit court did not abuse its discretion in denying Cypert's request for a second-degree murder instruction.

<u>4–3(a) Review</u>

Complying with our obligation under Ark. Sup. Ct. R. 4–3(a), we examined the record for all rulings adverse to Cypert on objections, motions, and requests made by either party. Finding no error, we affirm.

Affirmed.

*Streit Law Firm, PLLC*, by: *Jonathan R. Streit*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.